UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

Nº 15-CV-05634 (JFB)(AKT)
Nº 15-CV-05637 (JFB)(AKT)
Nº 15-CV-05638 (JFB)(AKT)
Nº 15-CV-05639 (JFB)(AKT)
_____

CANON U.S.A., INC.,

Plaintiff,

VERSUS

CAVIN'S BUSINESS SOLUTIONS, INC., ÉLAN MARKETING, INC. D/B/A ÉLAN OFFICE SYSTEMS, THE LIOCE GROUP, INC., AND ZENO OFFICE SOLUTIONS, INC.,

Defendants.
_____

**MEMORANDUM AND ORDER**
September 23, 2016
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff, Canon U.S.A., Inc. ("Canon" or "plaintiff"), commenced these four actions on September 29, 2015, bringing breach of contract and fraud claims against Cavin's Business Solutions, Inc. ("Cavin's"), Élan Marketing, Inc. d/b/a Élan Office Systems ("Élan"), Zeno Office Solutions, Inc. ("Zeno"), and The Lioce Group, Inc. ("Lioce") (together, "defendants" or the "retail dealers"), as well as a claim for the violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1 *et seq.* against Cavin's, a claim for the violation of the Nevada Deceptive Trade Practices Act, Nev. Stat. §§ 598.0903 *et seq.* against Élan, and a claim for the violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.* against Zeno. On December 4, 2015, all four cases were deemed related and 15-CV-05637, 15-CV-05638, and 15-CV-05639 were re-assigned to this Court.

Defendants move to dismiss plaintiff's complaints pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6). For the reasons set forth below, the Court denies defendants' motions to dismiss plaintiff's breach of contract claims and grants defendants' motions to dismiss plaintiff's fraud claims and claims for the violation of the North Carolina Unfair and Deceptive Trade Practices Act, the Nevada Deceptive Trade Practices Act, and the Florida Deceptive and Unfair Trade Practices Act.

More specifically, with respect to the breach of contract claim, defendants argue that the one-year statute of limitations set forth in the Office Imaging Retail Dealer

Agreements (the "Dealer Agreements") bars these lawsuits. However, plaintiff asserts that the exception in that statute of limitations provision for suits involving disputes about "payment of the purchase price of the products" applies to the instant lawsuits regarding the Canon Strategic Marketing Plan Program (the "CSMP Program"), which incentivizes retail dealers with specific monetary credits in connection with the sale of certain business equipment. Although defendants argue that the CSMP Program does not involve the "payment of the purchase price of the products" and the instant dispute cannot possibly fall within that exception, the Court cannot make that determination in this case at the motion to dismiss stage. The operation of the CSMP Program is complex and the Court is unable to determine from the face of the complaints whether or not the CSMP Program would fall within the "payment of the purchase price of the products" exception. Thus, the motions to dismiss the breach of contract claims are denied.

However, the motions are granted with respect to the fraud claims because, based upon the complaints, it is clear that the fraud claims are duplicative of the breach of contract claims. In addition, the Court dismisses plaintiff's claims under the consumer protections laws of North Carolina, Nevada, and Florida because the parties agreed in the Dealer Agreements to a New York choice-of-law provision, and applying New York law to this case does not violate fundamental public policies of the other jurisdictions, nor do any of these jurisdictions have a materially greater interest in this dispute.

I. BACKGROUND

A. Factual Background

Unless otherwise noted, the following facts are taken from the complaint ("Compl.") filed against Cavin's in 15-CV-05634. Defendants assert that Canon "us[ed] the same boilerplate complaint" in each lawsuit (Cavin's Mot. to Dismiss at 1), and plaintiff concedes that the allegations in each of the four actions at issue are "predicated upon separate but essentially identical misconduct committed by the [d]efendants while serving as independent authorized retail dealers" of Canon-brand business equipment. (Pl.'s Opp'n at 1.)

Canon is the exclusive wholesale distributer of Canon-brand products in the United States. (Compl. ¶ 6.) Canon is a New York corporation with its headquarters and principal place of business in Melville, New York. (*Id.* ¶ 1.) Canon markets Canon-brand business equipment, such as high-speed printers, copiers, and fax machines, as well as accessories and spare parts, to end-user customers through a nationwide network of authorized, independent Canon retail dealers. (*Id.* ¶¶ 6-8.) Authorized Canon retail dealers also maintain service staffs trained by Canon to provide end-user customers with maintenance and repair services for Canon-brand business equipment. (*Id.* ¶ 8.) End-users can buy or lease Canon business equipment and, consequently, UCC-1 financing statements are routinely filed in connection with the acquisition by end-user customers of Canon business equipment. (*Id.* ¶ 9.)

Canon offers and contractually requires its authorized retail dealers to utilize promotional programs in connection with the retail dealers' marketing of Canon-brand business equipment. (*Id.* ¶ 10.) These

2

programs include the CSMP Program, which is designed to "incentivize and reward authorized Canon retail dealers for their efforts to market Canon-brand business equipment to larger end-user customers who make commitments to acquire multiple units of business equipment over a specified period of time." (*Id.* ¶ 11.) Large end-user customers ("CSMP customers") commit to acquire or lease from a retail dealer units of Canon business equipment that has an aggregate wholesale price of a specified amount for a specified time period. (*Id.* ¶ 12.)

The retail dealers submit information regarding the placement of each unit of Canon business equipment and Canon provides "specific monetary credits" to the retail dealer for purchase or lease of the units of equipment that the retail dealer documents as having been placed with CSMP customers. (*Id.* ¶¶ 12, 14.) If the retail dealer does not purchase enough equipment from Canon for placement with the CSMP customers to meet the proposed target, Canon "charges back" the credits. (*Id.* ¶ 12.) Canon alleges that the credits it provides under the CSMP Program are "discounts" from the purchase price of the equipment that retail dealers have placed with CSMP customers. (*Id.*) Canon alleges that it does not have a way of independently identifying that a unit has been placed with a particular CSMP customer; this identification is carried out by each retail dealer. (*Id.* ¶ 14.) The retail dealer identifies each unit of business equipment with a serial number and provides Canon with documentation detailing the placement of each unit with a CSMP customer for which the retail dealer is seeking the issuance of a credit pursuant to the CSMP Program. (*Id.*)

Canon and all of its retail dealers enter into a written authorized retail dealer agreement. The Dealer Agreements set forth the terms and conditions of the retail dealers' business relationships with Canon. (*Id.* ¶ 7.) Cavin's is a retail dealer and distributor of office equipment headquartered in North Carolina. (*Id.* ¶¶ 2, 19.) Cavin's entered into the Dealer Agreement with Canon in or about February 2011. (*Id.* ¶ 19.) Élan is a Nevada corporation with its headquarters and principal place of business in Nevada. (Élan Compl. ¶ 2.) Élan entered into the Dealer Agreement with Canon in July 2005. (*Id.* Ex. A.) That agreement was terminated in October 2014. (*Id.* ¶ 24.) Lioce is an Alabama corporation with its headquarters and principal place of business in Alabama. (Lioce Compl. ¶ 2.) Lioce entered into the Dealer Agreement with Canon in May 2007. (*Id.* Ex. A.) Zeno is a Florida corporation with its headquarters and principal place of business in Florida. (Zeno Compl. ¶ 2.) Zeno entered into the Dealer Agreement with Canon in August 2007. (*Id.* Ex. A.) That agreement was terminated in April 2013. (*Id.* ¶ 24.) The Dealer Agreements are pre-printed form contracts, and the terms of the Dealer Agreement Canon signed with each of the retail dealers "do not substantively differ." (Pl.'s Opp'n at 5.)

Canon alleges that defendants submitted false and fraudulent documentation indicating that units of Canon business equipment were placed with particular CSMP customers when in fact they were placed with other end-user customers. (Compl. ¶ 15.) Canon claims that the retail dealers then qualified for "unearned and undeserved CSMP Program credits . . . for particular units, and thereby avoid[ed] payment of the full purchase price due and owing to Canon . . . for such units." (*Id.*) Canon alleges that defendants defrauded Canon and violated Sections 2.1, 9, and 16.2 of the Dealer Agreements, which require the retail dealers to: (i) participate in the CSMP Program and submit to its terms; (ii) pay for the products in accordance with the terms of Canon's

3

invoices "except for the amount of any written credit memorandum"; and (iii) "comply with all laws and regulations applicable . . . in connection with the sale and marketing" of Canon products. (*Id.* ¶¶ 20-32; Dealer Agreement §§ 2.1, 9, 16.2.[1])

To support these allegations, Canon states that it has found a correlation between two facts relating to a retail dealer's business and the likelihood that false and fraudulent information was submitted by that dealer to Canon in connection with its participation in the CSMP Program. (*Id.* ¶ 18.) First, Canon states that it is likely that a retail dealer submitted false and fraudulent information if a significantly large percentage of the dollar value of the overall number of units of business equipment acquired in a given year were attributed by the retail dealer as acquired by CSMP customers. (*Id.*) Second, Canon states that it is likely that a retail dealer submitted false and fraudulent information if filed UCC-1 financing statements reflect serial numbers for units that the retail dealer claimed to Canon had been placed with CSMP customers, but in fact indicate that the equipment was placed with a different end-user customer. (*Id.*)

Plaintiff also alleges that, after identifying each of the defendants as having engaged in fraudulent conduct in connection with their participation in the CSMP Program, Canon sought to audit each of the defendant's books and records. (Compl. ¶ 25.) Canon alleges that it sent audit demands to Élan, Lioce, and Zeno in February 2015 and to Cavin's in May 2015, and that Cavin's, Élan, and Zeno refused to permit Canon to perform the requested audit. (Compl. ¶ 25; Élan Compl. ¶ 27; Zeno Compl. ¶ 27; Lioce Compl. ¶ 25.) Lioce submitted to a partial audit of its books and records related to its participation in the CSMP Program, and Canon alleges that the audit disclosed that Lioce received more than $2 million in CSMP credits that were not legitimately earned. (Lioce Compl. ¶ 23, 25.[2])

The Dealer Agreements contain a choice-of-law provision, as well as a clause containing a limitations period. Section 15 states that the Dealer Agreements are to be governed by and construed in accordance with New York law. (Dealer Agreement § 15.1.) It designates New York as the sole and exclusive jurisdiction for the retail dealers to bring an action against Canon to enforce the agreement's terms (*Id.* § 15.3) and contains a provision stating that each dealer consents to the non-exclusive jurisdiction of New York courts with respect to any claim Canon may bring. (*Id.* § 15.3.) It also provides that "any suit between the parties, other than for the purchase price of [Canon's] products or for indemnification . . . shall be commenced, if at all, within one (1) year of the date that cause of action accrues." (*Id.* § 15.4.)

B. Procedural History

Plaintiff filed these separate actions on September 29, 2015. Defendant Lioce filed a motion to dismiss on November 30, 2015. On December 4, 2015, all four cases were deemed related, and 15-CV-05637, 15-CV-05638, and 15-CV-05639 were re-assigned to this Court. On January 13, 2016, defendants Cavin's, Élan, and Zeno filed motions to dismiss. Plaintiff filed one opposition to the four separate motions on February 16, 2016. The defendants collectively submitted a reply on March 1, 2016. Oral argument was held on

---

[1] Unless otherwise noted, the Court cites to the Dealer Agreement Canon entered into with Cavin's.

[2] The Court notes that there are two paragraphs numbered 23. The Court cites to the second of the two, which the Court assumes the plaintiff intended to label paragraph number 26.

April 8, 2016. The Court has considered all of the parties' submissions.

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations set forth in the complaints as true and draw all reasonable inferences in favor of the non-moving party. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. 556 U.S. 662 (2009). The Supreme Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679 (explaining that though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations"). Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting and citing *Twombly*, 550 U.S. at 556-57 (internal citation omitted)).

The Court notes that, in adjudicating these motions, it is entitled to consider "any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint." *Subaru Distributors Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005).

## III. DISCUSSION

### A. Breach of Contract Claims

Defendants contend that plaintiff's claims for breach of contract should be dismissed as barred by the one-year statute of limitations agreed to by the parties in the Dealer Agreements.[3] Because factual issues remain that could defeat this affirmative defense, the Court concludes that application

---

[3] Defendants Cavin's and Lioce continue to act as retail dealers of Canon equipment and, thus, argue that Canon's claims for submissions made more than one year before September 29, 2015 (the date the complaints were filed) should be dismissed as barred by the one-year limitations provision. Élan argues that that the one-year limitations provision bars Canon's breach of contract claim against it entirely because Élan and Canon terminated their Dealer Agreement "in or about October 2014" and Canon has "not identified a single improper submission in the year prior to the filing of its lawsuit." (Élan Mot. to Dismiss at 7.) Zeno also argues that the one-year limitations provision bars Canon's breach of contract claim against it entirely because Zeno and Canon terminated their Dealer Agreement "in or about April 2013." (Zeno Mot. to Dismiss at 8.)

5

of the one-year limitations period is unwarranted at this juncture.

Section 15.4 of the Dealer Agreements provides:

> DEALER AGREES THAT ANY SUIT BETWEEN THE PARTIES, OTHER THAN FOR PAYMENT OF THE PURCHASE PRICE OF THE PRODUCTS OR FOR INDEMNIFICATION UNDER PARAGRAPH 12 OF THIS AGREEMENT, SHALL BE COMMENECED, IF AT ALL, WITHIN ONE (1) YEAR OF THE DATE THAT THE CAUSE OF ACTION ACCRUES.

The parties dispute whether the "payment of the purchase price of the products" carve-out applies to the CSMP Program. Plaintiff argues that the recovery it seeks is payment of the purchase price of Canon equipment that was wrongfully discounted due to defendants' misconduct. It is plaintiff's position that recouping unearned credits used to purchase Canon products is synonymous with seeking "payment of the purchase price" of Canon products because "[i]f an unearned credit were used to offset the purchase price of a [p]roduct, there is, by definition, an unpaid balance of the purchase price of that [p]roduct." (Pl.'s Opp'n at 12.) Defendants contend that the carve-out is inapplicable because the alleged breach relates to "credits" issued as "rewards" to be applied toward future purchases. They maintain that any credits issued by the plaintiff were for equipment defendants had already purchased at full price and that the subsequent alleged use by defendants of CSMP credits to purchase additional equipment does not transform plaintiff's claims for wrongfully issued credits into claims for "payment of the purchase price of products." (Defs.' Reply at 13.)

The Court concludes that resolution of the defendants' statute of limitations argument requires a fact-specific evaluation that is not determinable at this stage of the litigation. "[T]he statute of limitations is an affirmative defense, the determination of which requires a consideration of the merit of both parties' claims and defenses." *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 268 F.R.D. 160, 166 (E.D.N.Y. 2010). Because a statute of limitations defense can be highly fact dependent, "[a] motion to dismiss is often not the appropriate stage to raise affirmative defenses like the statute of limitations." *Ortiz v. City of New York*, 755 F. Supp. 2d 399, 401 (E.D.N.Y. 2010). District courts "have not dismissed actions as untimely on Rule 12(b)(6) motions unless the 'complaint shows clearly that a claim is not timely.'" *Id.* at 401-02 (quoting *Robert Smalls Inc. v. Hamilton*, No. 09-CV-7171, 2010 WL 3238955, at *9 (S.D.N.Y. July 19, 2010)); *see also Bice v. Robb*, 324 F. App'x 79, 81 (2d Cir. 2009) (reversing and remanding because the "court was obligated to give the plaintiffs the opportunity for full discovery . . . to determine whether there was 'a genuine issue as to any material fact' relating to timeliness" because "[t]he question of whether the statute of limitations has run turns on a number of unresolved issues that would benefit from discovery"). Here, the process by which payment for equipment was actually made to Canon and the manner in which CSMP credits were earned and used by the retail dealers bears directly on the applicability of the statute of limitations. The full factual scope of the operation of the CSMP Program is far from clear based solely on the complaints. In other words, based simply upon the description of the CSMP Program contained in the complaints, the Court cannot determine that the CSMP Program unambiguously falls outside the exception to the one-year statute of limitations in the Dealer Agreements for

6

suits involving "payment of the purchase of the products." To be clear, the Court is not concluding that the CSMP Program necessarily falls within that exception either. Instead, that critical issue simply cannot be determined based upon the allegations in the complaints. Thus, the motions to dismiss on this grounds must be denied at this juncture.

Defendants seek to distinguish this case from *Altaire Pharmaceuticals, Inc. v. Rose Stone Enterprises*, No. 13-CV-4373 (JFB)(WDW), 2013 WL 6235862, at *6 (E.D.N.Y. Dec. 3, 2013) and *Bice* by arguing that there are no unresolved issues of fact that would benefit from development during discovery. The Court disagrees and finds that the issue of whether the CSMP Program credits[4] fall within the "payment of the purchase price" carve-out is one that can be resolved only on a more complete record. Thus, the Court denies the motions to dismiss the breach of contract claims based upon the application of the one-year statute of limitations. Although further factual information regarding the CSMP Program could show that plaintiff's breach of contract claims are in fact untimely under the Dealer Agreements, the present pleadings are insufficient to decide this question. If they wish, defendants can raise the statute of limitations issue again at the summary judgment stage once discovery has been completed.

B. Fraud Claims

Plaintiff also brings a claim for common law fraud against each of the defendants, alleging that the retail dealers submitted information and documentation to Canon that reflected false and fraudulent acquisitions by CSMP customers of equipment purchased from Canon. Canon alleges that defendants represented to Canon that certain units had been placed with CSMP customers, "but instead had been acquired by different end-users." (Compl. ¶¶ 35-36.) Defendants seek to dismiss plaintiff's fraud claims by arguing that they are duplicative of plaintiff's claims for breach of contract. For the reasons set forth below, the Court agrees with defendants and dismisses Canon's fraud claims as duplicative of its claims for breach of contract.[5]

Under New York law, "[i]t is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987). To state a fraud claim made in connection with a breach of contract claim, New York law requires the claimant to "(i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Bridgestone/Firestone,*

---

[4] Plaintiff describes the CSMP Program credits as "discounts" in its complaints, whereas defendants argue that they are not "discounts," but in fact "credits" that can be applied toward the purchase of future products. Plaintiff states that under either conception, the carve-out applies. (Pl.'s Opp'n at 13.) Defendants reject this approach. (Defs.' Reply at 14 ("In asking the Court to dismiss this distinction as 'semantics,' [p]laintiff seeks to avoid responsibility for the language in its own contracts.").) Without resolving the issue of whether the CSMP Program credits are properly described as "discounts," the Court uses the term "credits" for the purposes of deciding these motions.

[5] Because the Court finds that plaintiff's fraud claims must be dismissed as duplicative of plaintiff's breach of contract claims, it need not reach defendants' arguments that the fraud claims should be dismissed on the other grounds raised by the defendants.

*Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996) (citations omitted); *see also Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 183 (2d Cir. 2007).

Canon's claims for fraud fail under this standard. Canon relies on the same allegations to support its claims for fraud and its claims for breach of contract. Canon alleges that the defendants' "submission of false and fraudulent information and documentation . . . in connection with the . . . CSMP Program" "violated the provisions of the Dealer Agreement" and that defendants committed fraud by "submit[ing] information and documentation to Canon" "pursuant to" their participation in the CSMP Program that "purport[ed] to reflect that certain units of Canon-brand business equipment . . . had been acquired by particular CSMP customers." (Compl. ¶¶ 31, 35.) Canon does not point to any alleged misrepresentation collateral or extraneous to the contract and "merely appends allegations about [defendants'] state of mind to [its] claim[s] for breach of contract." *Papa's-June Music, Inc. v. McLean*, 921 F. Supp. 1154, 1162 (S.D.N.Y. 1996)

Canon argues that its fraud claims fall within the exception to the general prohibition against parallel breach of contract and fraud claims because it has alleged a legal duty separate from the duty to perform under the contract. Canon asserts that defendants had "superior knowledge" about "whether specific products had actually been placed with specific CSMP customers" and that this knowledge created a duty by defendants to disclose this information to plaintiff. (Pl.'s Opp'n at 34.) The Court finds that plaintiff has not sufficiently alleged a legal duty separate from the duty to perform under contract.

"New York recognizes a cause of action to recover damages for fraud based on concealment, where the party to be charged has superior knowledge or means of knowledge, such that the transaction without disclosure is rendered inherently unfair." *Miele v. Am. Tobacco Co.*, 770 N.Y.S.2d 386, 391 (App. Div. 2003); *see also Abrams v. Gen. Motors Corp.*, 466 N.Y.S.2d 124, 127 (Sup. Ct. 1983) ("If one party has superior knowledge or has means of knowledge not available to both parties, then he is under a legal obligation to speak and the silence would constitute fraud.").

Plaintiff states that it "has no practical means of independently confirming that a unit bearing a particular serial number has, in fact, been placed with a particular CSMP customer," yet acknowledges that, under the Dealer Agreements, it had a contractual right to statements regarding defendants' books and records as well as a right to audit defendants' books and records. (Compl. ¶¶ 14, 25.) Moreover, even if plaintiff had adequately alleged defendants' superior knowledge, plaintiff does not allege how Canon's lack of knowledge created in defendants a disclosure duty. The cases cited by plaintiff in support of its argument that defendants had a legal duty based on superior knowledge are cases in which consumers brought claims of fraudulent inducement against manufactures with superior knowledge or defendants who were in a "position of trust or special confidence . . . that imposed obligations beyond the express agreements." *Bridgestone/Firestone, Inc.*, 98 F.3d at 20. In contrast, here, defendants do not occupy a position of trust or special confidence that would impose obligations beyond the Dealer Agreements. *Id.*; *see Merrill Lynch & Co.*, 500 F.3d at 181 ("New

York courts are generally skeptical of claims of reliance asserted by sophisticated businessmen engaged in major transactions [who] enjoy access to critical information but fail to take advantage of that access." (citations and internal quotation marks omitted)). Accordingly, because plaintiff's fraud claims are indistinguishable from its claims for breach of contract, plaintiff's claims for fraud are dismissed.

C. State Consumer Protection Claims

Plaintiff brings three state consumer protection claims: (i) a claim under North Carolina's Unfair and Deceptive Trade Practices Act (the "NCUDTPA") against Cavin's; (ii) a claim under Nevada's Deceptive Trade Practices Act (the "NDTPA") against Élan; and (iii) a claim under Florida's Deceptive and Unfair Trade Practices Act (the "FDUTPA") against Zeno. The Court finds that the New York choice-of-law provision contained in the Dealer Agreements prevents Canon's assertion of North Carolina, Nevada, and Florida state consumer protection and unfair trade practices claims and grants defendants Cavin's, Élan, and Zeno's motions to dismiss these claims.[6]

"Generally, [New York] courts will enforce a choice-of-law clause so long as the chosen law bears a reasonable relationship to the parties or the transaction." *Welsbach Elec. Corp. v. MasTec N. Am., Inc.*, 859 N.E.2d 498, 500 (N.Y. 2006) (citation omitted). This is because "[a] basic precept of contract interpretation is that agreements should be construed to effectuate the parties' intent." *Id.* (citations omitted); *see also IRB-Brasil Resseguros, S.A. v. Inepar Invs., S.A.*, 982 N.E.2d 609, 611 (N.Y. 2012) (emphasizing the goal of providing certainty and predictability to contracting parties in requiring enforcement of choice-of-law provision). "New York courts may refuse to enforce a choice-of-law clause only where (1) the parties' choice has no reasonable basis or (2) application of the chosen law would violate fundamental public policy of another jurisdiction with materially greater interests in the dispute." *Beatie and Osborn LLP v. Patriot Scientific Corp.*, 431 F. Supp. 2d 367, 378 (S.D.N.Y. 2006) (citing *Radioactive, J.V. v. Manson*, 153 F. Supp. 2d 462, 469-70 (S.D.N.Y. 2001)); *see also Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549, 556 (2d Cir. 2000) ("New York law is clear in cases involving a contract with an express choice-of-law provision: Absent fraud or violation of public policy, a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction.").

Section 15.1 of the Dealers Agreements provides that "THIS AGREEMENT IS MADE WITHIN THE STATE OF NEW YORK AND SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK." The Court cannot conclude that the application of the parties' choice-of-law clause would violate a fundamental public policy of North Carolina, Nevada, or

---

[6] The Court notes that Cavin's did not raise the choice-of-law provision in the Dealer Agreements in its initial motion to dismiss. However, in the defendants' consolidated reply brief, Cavin's appears to join the other defendants in arguing that the choice-of-law provision is a basis for dismissal of plaintiff's state consumer protection claims. (Defs.' Reply at 33 (arguing that plaintiff has no statutory consumer protection or unfair trade practices claim because of "its own choice of New York law imposed on [d]efendants Cavin's, Élan, and Zeno in a form contract of adhesion").) Since the Court finds that the choice-of-law clause is dispositive, the Court need not reach Cavin's argument that New York choice-of-law rules apply.

Florida. Plaintiff asserts that "[s]tate deceptive trade practices statutes, are, by nature, fundamental public policies of the states whose legislatures adopt them" and that North Carolina, Nevada, and Florida have strong public policies prohibiting fraudulent and deceptive commercial conduct within their borders. (Pl.'s Opp'n at 38-9.) Plaintiff supports this argument by pointing to courts in California, New Jersey, and Texas that have identified the respective state's trade practices statute as embodying an "important public policy," an "important state interest," or a "strong" state policy. (*Id.* at 38.) Although the Court does not question the significance of the state deceptive trade practices statutes to the state legislatures that adopted them, plaintiff points to no authority in North Carolina, Nevada, or Florida identifying the enforcement of the NCUDTPA, NDTPA, or FDUTPA as a "fundamental" public policy. Moreover, even if the Court assumes that the North Carolina, Nevada, and Florida state deceptive trade practices statutes further fundamental public policies, plaintiff does not show how application of the chosen law, New York, would violate those policies nor how North Carolina, Nevada, and Florida have "materially greater interests" than New York in this dispute. Plaintiff acknowledges that New York has its own analogous statute, New York General Business Law § 349, and admits that it does not bring a New York consumer protection claim because the statute does not extend to the misconduct alleged here. (*Id.*) In the Court's view, the enforcement of a choice-of-law provision that would apply a narrower consumer protection or deceptive trade practices statute does not amount to a violation of a fundamental public policy of another, more interested jurisdiction. *See, e.g. Finucane v. Interior Constr. Corp.*, 695 N.Y.S.2d 322, 325 (N.Y. App. Div. 1999) (enforcing Oklahoma choice-of-law provision even though Oklahoma has a "more permissive view on indemnification provisions" because a "mere showing that our law is different from that of a sister State" does not meet the burden of demonstrating that another state's law is offensive to public policy).

IV. CONCLUSION

For the reasons set forth above, the Court denies defendants' motions to dismiss plaintiff's breach of contract claims, and grants defendants' motions to dismiss plaintiff's fraud claims and claims for the violation of the North Carolina Unfair and Deceptive Trade Practices Act, the Nevada Deceptive Trade Practices Act, and the Florida Deceptive and Unfair Trade Practices Act.

SO ORDERED.

_____

JOSEPH F. BIANCO
United States District Judge

Dated: September 23, 2016
Central Islip, NY

\*\*\*

Plaintiff is represented by Richard H. Silberberg, Christopher G. Karagheuzoff, Robert G. Manson, and Dai Wai Chin Feman of Dorsey & Whitney LLP, 51 West 52nd Street New York, New York 10019. Defendant Cavin's Business Solutions, Inc. is represented by Douglas M. Jarrell and Matthew F. Tilley of Robinson, Bradshaw & Hinson, P.A., 101 North Tryon Street, Suite 1900 Charlotte, North Carolina 28246 and R. David Lane, Jr. of Marshall Dennehey Warner Coleman & Goggin, 88 Pine Street, 21st Floor, New York, New York 10005.

Defendants Élan Marketing, Inc. and Zeno Office Solutions, Inc. are represented by Christopher M. Mason and Danielle McLaughlin of Nixon Peabody LLP, 437 Madison Avenue, New York, New York 10022. Defendant The Lioce Group is represented by Gregory H. Revera of the Leo Law Firm, LLC, 200 Randolph Avenue, Huntsville, Alabama 35801 and Joshua S. Krakowsky, Larry Hutcher, and Mark E. Spund of Davidoff Hutcher & Citron LLP, 200 Garden City Plaza Suite 305 Garden City, New York 11530.